ATTORNEY DISCIPLINARY PROCEEDING
PER CURIAM.
11 This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Steven Courtney Gill, an attorney licensed to practice law in Louisiana.
UNDERLYING FACTS
On August 10, 2008, police officers observed a vehicle driving on Tulane Avenue *670 in New Orleans at a high rate of speed and in a reckless manner. The officers stopped the vehicle and identified the driver as respondent, who was noted to have a strong odor of alcohol on his breath. Respondent performed poorly on field sobriety tests and a Breathalyzer test revealed his blood alcohol content to be .138g%. Respondent was then arrested and charged with DWI and reckless operation of a motor vehicle.
On December 24, 2008, respondent was stopped for speeding on I — 10 at College Drive in Baton Rouge while traveling 90 m.p.h. in a 55 m.p.h. zone. The police officer noted that respondent had a strong odor of alcohol on his breath and person, his speech was slurred, and his balance was swayed. Respondent performed poorly on field sobriety tests and refused to take a Breathalyzer test. Respondent was then arrested and charged with second-offense DWI, speeding, and reckless operation of a motor vehicle.
[2On February 7, 2009, at approximately 3:50 a.m., the New Orleans Police Department was called to the 800 block of South Peters Street, where respondent had been involved in a minor accident outside a nightclub. Upon arrival, officers observed that respondent was unable to walk straight or stand without assistance. Detecting an odor of alcohol about respondent, officers attempted to administer a field sobriety test, but respondent refused to participate. He also refused to take a Breathalyzer test. Respondent was then arrested and charged with DWI, no driver’s license on person, and careless operation.
The ODC was unaware of respondent’s DWI arrests until May 2009, when the director of the state’s Division of Administrative Law sent the ODC a letter attaching information pertaining to the December 24, 2008 and February 7, 2009 arrests. Thereafter, the ODC opened an investigation into the matter. Subsequently, respondent informed the ODC of his DWI arrest in New Orleans on August 10, 2008.
The Orleans Parish DWI cases were eventually consolidated. Respondent was convicted of DWI arising out of the August 10, 2008 arrest, was ordered to pay costs, and was placed on probation for six months. Respondent satisfied all probation requirements and paid all fines on June 16, 2010. As to the Baton Rouge case arising out of the December 24, 2008 arrest, in September 2009 respondent pleaded guilty to reckless operation in Baton Rouge City Court; the remaining charges were dismissed.
In July 2010, the ODC referred respondent to the Lawyers Assistance Program (“LAP”) for an evaluation. Scott Embley, LCSW evaluated respondent, but he indicated that respondent needed a more comprehensive evaluation to rule out alcohol dependency and to determine what form of treatment was appropriate. Following Mr. Embley’s evaluation, LAP recommended that respondent undergo a three-day inpatient evaluation at the Palmetto Addiction Recovery Center in RRayville, Louisiana. Respondent was admitted to Palmetto on June 20, 2011 for the inpatient evaluation. At the conclusion of the three-day evaluation, the Palmetto staff determined that respondent suffered from alcohol abuse and avoidant, dependent, and narcissistic personality features, and recommended that he participate in an intensive outpatient substance abuse treatment program (“IOP”). By letter to respondent, dated June 29, 2011, LAP provided respondent with the names of two approved IOP facilities in the New Orleans metro area; however, respondent declined to enroll in either IOP. Instead, respondent relocated to Texas, where he likewise declined to enroll in an IOP. After living in *671 Texas for approximately ten months, respondent moved back to Louisiana.
In June 2012, respondent enrolled in a six-week IOP at Addiction Recovery Resources of New Orleans (“ARRNO”), one of the facilities approved by’ LAP. On July 19, 2012, respondent was administratively discharged from the program due to noncompliance.
At approximately 6:00 p.m. on August 2, 2012, police officers working a security detail at the Louis Armstrong New Orleans International Airport were summoned to the American Airlines concourse with complaints that an intoxicated passenger was causing a disturbance at the departure gate. According to the police report, when the officers arrived at the gate, an airline employee pointed out respondent. The employee indicated that respondent had been denied boarding on his flight leaving at 6:30 p.m. because of his highly intoxicated state, which caused him to be unable to walk or stand without assistance. As the police officers spoke to respondent, they noticed a very strong odor of an alcoholic beverage emitting from his breath. In addition, his speech was slurred and his eyelids appeared heavy. The officers informed respondent that he would be permitted to make travel arrangements for the following morning, but that he would have to leave the gate area in the meantime. Respondent refused to comply with the officers’ I ¿instructions, and instead became argumentative and frequently used profane language in a loud voice. After about ten minutes, he stood up and walked twenty feet toward the concourse exit, but then sat down again, refused to move, and resumed his use of profanities toward the officers. The officers then arrested respondent for disturbing the peace — public intoxication. Once respondent was placed into a holding cell at the airport, he urinated through the steel meshing of the cell onto the opposite wall. He also told officers that he is an attorney and his mother is a retired judge, and that he and his family would file a lawsuit against the officers for his arrest. The disturbing the peace charge was ultimately dismissed by the District Attorney’s • Office on May 7, 2014, after respondent completed an “informal” diversion by entering an alcohol rehabilitation program.
In November 2012, the ODC sent correspondence to respondent informing Mm that a supplemental investigation had been opened based upon his arrest at the airport, and requesting a written response. Respondent’s response was due on or before November 20, 2012. Respondent did not reply to the correspondence, necessitating the issuance of a subpoena compelling his attendance at a sworn statement scheduled for January 3, 2013. After being served with the subpoena, respondent e-mailed a response to the ODC dated November 15, 2012, in which he denied that he was intoxicated at the time of his arrest. Respondent repeated this assertion under oath during his sworn statement and unequivocally testified that he had nothing to drink on August 2, 20Í2 while at the airport. This testimony was contrary to that given by the three police officers who arrested respondent on the day in question, each of whom indicated that respondent was very intoxicated.
In January 2013, LAP Director Buddy Stoekwell informed respondent that he would be required to complete an inpatient professional assessment at either ARRNO or Palmetto. Citing the costs of the assessment, respondent did not comply with LAP’S recommendation until December 2013. On December 17,152013, respondent was admitted to Palmetto for a three-day inpatient professional assessment. At the conclusion of the evaluation, the Palmetto *672 staff determined that respondent suffers from alcohol dependence and. personality-disorder with narcissistic and paranoid, features, and recommended that he complete a :LAR-approved long-term inpatient treatment program, experienced at treating chemically dependent lawyers.
On January 15, 2014, respondent entered an inpatient rehabilitation prográin at The Pathfinder, Inc., a state-funded treatment facility in- Huntsville, Alabama. Pathfinder is not a LAP-approved facility and Mr. Stockwell had concerns about the quality of the treatment program, in part because Pathfinder lacked a professionals’ track., Nevertheless, Mr. Stockwell agreed to approve respondent’s stay at the facility if respondent would commit to be treated at Pathfinder for a minimum of six months. Respondent stayed at Pathfinder for ninety days, as recommended by the treatment professionals at the facility, and was successfully discharged from the program in April 2014. On. June 20, 2014, respondent was arrested in New Orleans and charged with DWT.[1]
DISCIPLINARY PROCEEDINGS
In June 2013, the ODC filed formal charges against respondent, alleging that his conduct violated the following provisions of the Rules of Professional Conduct: Rules 8.1(a) (a lawyer shall not knowingly make a false statement of material fact in connection with a disciplinary matter), 8.1(c) (a lawyer shall not fail to cooperate with the ODC in its investigation), 8.4(a) (it is professional misconduct for a lawyer to violate the Rules of Professional Conduct), 8.4(b) (it is professional; misconduct for a lawyer, to commit a criminal act that reflects adversely on the |flIawyer’s honesty, trustworthiness, or fitness as a lawyer), and 8.4(d) (it is professional misconduct for a lawyer to engage in conduct prejudicial to the administration of justice).[2]
Respondent answered the formal charges and denied any misconduct. The matter then proceeded to a formal hearing on the merits, which was conducted by the hearing committee, in August 2014.

Hearing Committee Report

After considering the evidence and testimony presented at the hearing, the hearing committee made the following findings of fact and conclusions of law:
Respondent committed a criminal act in violation of Rules 8.4(a) and 8.4(b) when he disturbed the peace at the airport.
' Respondent' violated Rule- 8.1(a) by knowingly making a false statement of material fact in connection with a disciplinary matter. It was clear to the committee that respondent was not being honest about being intoxicated on one or more of the times he was charged with alcohol-related offenses. The committee also did not believe that respondent has been completely honest about the seriousness of his issues with alcohol. The committee found that respondent accepts little or no responsibility for his alcohol-related issues; is quick to blame his situation on others; and is angry, combative', and defensive.
*673 The committee did not find that respondent violated Rule 8.1(c) .by failing to cooperate with the ODC in its investigation, nor that he violated Rule 8.4(d). by engaging in conduct prejudicial to the administration of justice.
|7No member of the public was injured by respondent’s practice of law. Respondent self-reported and has voluntarily participated in the ODC’s requests, assessments, and treatment programs since 2008.
In mitigation, the committee found that respondent has no prior disciplinary record, he had no dishonest or selfish motive, and that he took initiative in seeking treatment in an effort to satisfy the ODC even though no formal charges were pending. The committee did not discuss aggravating factors.
Based on these findings, a majority of the committee recommended that respondent be suspended from the practice of law for two years, fully deferred with conditions. One member of the committee dissented and would recommend that respondent be suspended for two years, with all but ninety days deferred, followed by a two-year period of supervised probation, to include a requirement that respondent execute a LAP agreement and waive confidentiality in favor of the ODC.
The ODC objected to the leniency of the sanction recommended by the committee.

Disciplinary Board Recommendation

After review, the disciplinary board determined that the hearing committee’s factual findings .are supported by the record and are not manifestly erroneous. Based on these facts, the board found the following rule violations:
Rule 8.1(a) — This rule states, in pertinent part, that a lawyer shall not make a knowingly false statement of material fact in connection with a disciplinary matter. Here, the committee found that respondent was not honest with the ODC regarding the circumstances of “one or more” of his alcohol-related arrests. The ODC presented the testimony of several law enforcement .officers, who participated in the various arrests detailed in the formal charges. Although not specifically | Rstated in the hearing committee’s report, the committee apparently found the testimony of the officers to be credible. The record supports these conclusions.
Rule- 84(b) — This rule states that is professional misconduct for a lawyer to commit a criminal act, especially' one that reflects adversely on the lawyer’s honesty, trustworthiness, or fitness as a lawyer in other respects. Here, .the committee found that respondent was guilty of a criminal act with regard to his arrest at the New Orleans airport on August 2, 2012. Respondent also pleaded guilty to DWI based upon his August 10, 2008 arrest for that offense. Additionally, based upon the testimony of .the police officers and the apparent credibility determination of the committee detailed above, there appears to be clear and convincing evidence that respondent engaged in criminal acts regárding his December 24, ’2008 and February 7, 2009 arrests for 'DWI. Accordingly, the record supports the conclusion that respondent violated Rule 8.4(b).
Rule 84(a) — This rule states that it is professional misconduct for -a lawyer to violate or attempt to violate the Rules of Professional Conduct. By violating the Rules detailed above, respondent violated Rule 8.4(a).
The board agreed with the committee that respondent did not violate Rules 8.1(c) and 8.4(d). Rule 8.1(c) states that a lawyer shall cooperate with the ODC in its investigation of any matter before it. Here, while respondent was not honest with the ODC, the record indicates he was *674 compliant and cooperative during the ODC’s investigation of the arrests detailed in Count I.[3] In fact, respondent disclosed his DWI arrest to the ODC and filed updates with the ODC on the status of his DWI matters. Accordingly, the record supports the conclusion that respondent did not violate Rule 8.1(c).
19Rule 8.4(d) states that it is professional misconduct for a lawyer to engage in conduct prejudicial to the administration of justice. Here, while respondent was not honest with the ODC regarding the circumstances of his arrest, this conduct does not appear to rise to the level of conduct which is prejudicial to the administration of justice. Furthermore, there are no other allegations or circumstances that would demonstrate that respondent violated this rule. Accordingly, the record supports the conclusion that respondent did not violate Rule 8.4(d).
The board then determined that respondent knowingly, if not intentionally, violate ed duties owed to the public and the legal profession. While the circumstances that led to respondent’s multiple arrests did not cause any actual harm, the misconduct presented a significant threat of serious harm to the public, especially the incidents of driving while intoxicated. Additionally, respondent’s lack of honesty during the ODC’s investigation of his arrests caused harm to the profession. After considering the ABA’s Standards for Imposing Lawyer Sanctions, the board determined the baseline sanction is suspension.
In aggravation, the board found a dishonest or selfish motive (respondent’s dishonesty during the ODC’s investigation), a pattern of misconduct (numerous alcohol-related criminal acts), submission of false statements during the disciplinary process, and refusal to acknowledge the wrongful nature of the conduct. The only mitigating factor found by the board is the absence of a prior disciplinary record.
After further considering respondent’s misconduct in light of this court’s prior jurisprudence addressing similar misconduct, the board recommended that he be suspended from the practice of law for one year and one day.
Respondent filed an objection in this court to the disciplinary board’s recommendation. Accordingly, the matter was docketed for briefing and argument |inin accordance with Supreme Court Rule XIX, § 11(G)(1)(b). However, respondent subsequently withdrew his objection, and we therefore consider the case as a “no objection” matter pursuant to Rule XIX, § 11(G)(1)(a).
DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Banks, 09-1212 (La.10/2/09), 18 So.3d 57. While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee’s factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 *675 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
Respondent was arrested and charged with three DWI offenses and was arrested in connection with an alcohol-related disturbance at the airport. He also made false statements to the ODC regarding the circumstances of these arrests. Based on these facts, respondent has violated the Rules of Professional Conduct as found by the disciplinary board.
Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each ease and the seriousness of the offenses involved considered in light of any [^aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
The record supports a finding that respondent knowingly, if not intentionally, violated duties owed to the public and the legal profession. While it is fortunate that respondent did not cause any actual harm by his conduct, a significant threat of harm was present. The applicable baseline sanction in this matter is suspension. The aggravating and mitigating factors found by the board are supported by the record.
In recommending a sanction, the board relied upon In re: Baer, 09-1795 (La.11/20/09), 21 So.3d 941. In Baer, an attorney drove while intoxicated on two occasions, for which she was suspended from the practice of law for one year and one day. In discussing an appropriate sanction, we applied the following analysis:
We have imposed sanctions ranging from actual periods of suspension to fully deferred suspensions in prior cases involving attorneys who drive while under the influence of alcohol. However, as a general rule, we tend to impose an actual suspension in those instances in which multiple DWI offenses are at issue, as well as in cases in which the DWI stems from a substance abuse problem that appears to remain unresolved. Both of these concerns are implicated in the instant case. Therefore, we find it is appropriate to impose a one year and one day suspension, with no portion of the suspension deferred. [Internal footnote omitted.]
Both of our concerns set forth in Baer are present in the instant matter. Respondent engaged in multiple instances of driving while intoxicated, and in addition, he was arrested at the airport and charged with disturbing the peace and public intoxication. Furthermore, it does not appear that respondent has been completely honest with himself about the seriousness of his issues with alcohol, much less that he has resolved the problem. With respect to the latter, the board pointed out that respondent entered substance abuse treatment on two occasions but has been arrested for an alcohol-related offense soon after discharge from each 112treatment program. Therefore, the board reasoned that a one year and one day suspension, with no period of deferral, is appropriate, as such a sanction will require respondent to petition for reinstatement and prove his fitness by clear and convincing evidence before returning to the practice of law.
We agree. Accordingly, we will adopt the disciplinary board’s recommendation and suspend respondent from the practice of law for one year and one day. Should *676 respondent wish to resume the practice of law in the future, he will be required to make a formal application for reinstatement under Supreme Court Rule XIX, § 24 and demonstrate to our satisfaction that he meets all of the reinstatement criteria set forth therein.
DECREE
Upon review of the findings and- recommendations of the hearing committee and disciplinary board, and considering the record, it is ordered that Steven Courtney Gill, Louisiana Bar Roll number 30520, be and he hereby is suspended from the practice of law for one year and one day. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal- interest to commence- thirty days from - the date- of. finality of this court’s judgment until paid.

. This arrest is not part of the formal charges. The record does not indicate whether the matter has been resolved.

. As originally filed, the formal charges consisted of two counts; however, following a hearing, the hearing committee concluded that the ODC did not carry its burden of proving by clear and convincing evidence the misconduct alleged in the second count of the formal charges. The disciplinary board agreed with this finding and recommended that Count II be dismissed. The ODC did not object to the board's recommendation in this regard. Accordingly, this opinion does not address Count II, and simply refers to the disciplinary proceeding as if it had always consisted of a single count of formal charges.

. The formal charges also allege and the record indicates a lack of cooperation with LAP; however, the board noted that a lack of cooperation with LAP does not fall within the scope of Rule 8.1(c), nor does it violate any other Rule, as refusal to seek appropriate treatment for an alcohol problem is not misconduct. Rather, respondent’s lack of cooperation with LAP can and should be considered when determining the appropriate sanction in this matter.