# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE

NEWS RELEASE #054

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **8th day of December, 2023** are as follows:

**PER CURIAM:**

2023-B-00620     *IN RE: ALBERT A. BENSABAT, III*

SUSPENSION IMPOSED. SEE PER CURIAM.

Weimer, C.J., dissents and assigns reasons.
Crichton, J., dissents.

# SUPREME COURT OF LOUISIANA

## No. 2023-B-00620

## IN RE: ALBERT A. BENSABAT, III

Attorney Disciplinary Proceeding

**PER CURIAM**

This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, Albert A. Bensabat III, an attorney licensed to practice law in Louisiana.

## FACTUAL BASIS

*Count I*

On April 28, 2018 respondent was arrested on charges of DWI and careless operation of a vehicle. On November 8, 2018 responded pleaded guilty to first offense DWI and was placed on probation for one year. Respondent self reported his conviction to the ODC on November 15, 2018.

Respondent admits that his conduct in Count I violated the following provisions of the Rules of Professional Conduct: Rules 8.4(a) (violation of the Rules of Professional Conduct) and 8.4(b) (commission of a criminal act reflecting adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer).

*Count II*

On April 13, 2018 the ODC received notice from respondent's bank of overdrafts in his client trust account. Respondent acknowledged to the ODC during its investigation that he did not reconcile his trust account on at least a quarterly basis, suggesting that he was unaware of this requirement.

In July 2019, respondent successfully completed the Louisiana State Bar Association's Trust Accounting School.

Respondent admits that his conduct in Count II violated the following provisions of the Rules of Professional Conduct: Rules 1.15(a) (safekeeping property of clients of third persons), 1.15(f) (a lawyer shall subject all client trust accounts to a reconciliation process at least quarterly), 8.4(a), and 8.4(b).

## DISCIPLINARY PROCEEDINGS

In August 2020, the ODC filed formal charges against respondent. Following the filing of respondent's answer to the formal charges, the matter was set for a hearing on December 14, 2021. At the outset of the hearing, respondent stipulated to the formal charges and the rule violations, as alleged. The parties also stipulated that there had been no identifiable client harm as a result of the trust account violations in Count II. The hearing then proceeded on sanction issues only. The Hearing Committee and the Disciplinary Board recommended that respondent be suspended from the practice of law for one year and one day, and that respondent be assessed with costs and expenses of this matter. Respondent objected to these recommendations and the case was docketed for oral argument.

## DECREE

Upon review of the recommendations of the hearing committee and the disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Albert A. Bensabat III, Louisiana Bar Roll number 9970, be and he hereby is suspended from the practice of law for three years. This suspension shall be deferred in its entirety subject to a two-year period of probation. As a condition of probation respondent is to refrain from driving any vehicle not installed with an interlock device designed to detect alcohol consumption, installed at respondent's

expense. Reports from such devices are to be submitted to the Office of Disciplinary Counsel monthly. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days form the date of finality of this court's judgment until paid.

*Attorney Disciplinary Proceeding*

**WEIMER, C.J.**, dissenting.

In this attorney disciplinary proceeding involving respondent's DWI conviction, the majority opinion deviates from years of jurisprudence addressing appropriate sanctions for DWI offenses. Finding the discipline imposed by the opinion problematic and ineffective, I respectfully dissent.

The underlying facts of this case involve respondent losing control of his vehicle and crashing it into a ditch. A breathalyzer test showed respondent's blood alcohol level was 0.132g%.[1] Respondent was arrested on charges of DWI and careless operation of a vehicle. Thereafter, he pleaded guilty to first offense DWI and was placed on probation for one year. He subsequently self-reported his conviction to the ODC.

The ODC referred respondent to the Judges and Lawyers Assistance Program ("JLAP") for an independent evaluation. Respondent was evaluated by Jamie Landry, Ph.D. Dr. Landry's impression was that respondent suffers from a substance use disorder, moderate. Of note in Dr. Landry's report was that respondent pleaded guilty to the DWI charge rather than participate in a pre-trial diversion program because he did not want to abstain from alcohol for one year as the diversion program required. Respondent also reported to Dr. Landry that he occasionally uses marijuana. Dr.

---

[1] This alcohol level was registered after the respondent indicated he had slept for a period of time following the consumption of alcohol and felt he was capable of driving.

Landry recommended that, based on her evaluation, respondent should submit to a JLAP-approved multi-disciplinary inpatient professional assessment.

Although respondent did not immediately obtain the recommended assessment, citing financial concerns, he was subsequently admitted to Palmetto Addiction Recovery Center for a two-day evaluation. Palmetto determined that respondent meets the DSM-5 criteria for alcohol use disorder, severe. Respondent disagreed with this assessment and requested a second opinion evaluation, which was conducted at the Professionals' Wellness Evaluation Center ("PWEC"). PWEC also concluded that respondent meets the diagnostic criteria for alcohol use disorder, severe, as well as cannabis use disorder, moderate, in early remission and cocaine use disorder, severe, in sustained remission. Both Palmetto and PWEC recommended that respondent complete a long-term inpatient treatment program and then sign a five-year JLAP recovery agreement. Unfortunately, respondent has not complied with these recommendations.

Respondent admitted that his conduct violated several of the Rules of Professional Conduct. The majority has declined to adopt the disciplinary board's recommendation to suspend respondent from the practice of law for one year and one day and, instead, imposes a fully deferred three-year suspension, subject to a two-year period of probation. As a condition of probation, respondent is also ordered to refrain from driving any vehicle not installed with an interlock device designed to detect alcohol consumption. After reviewing the record, and considering the facts of this case, I find the imposed sanction is not supported by our jurisprudence and fails to serve the best interests of the respondent or the public.

This court long ago addressed the issue of the appropriate sanction for lawyers who are arrested for DWI. In the court's seminal case, **In re: Baer**, 09-1795, p. 6 (La. 11/20/09), 21 So.3d 941, 944, the court explained:

> We have imposed sanctions ranging from actual periods of suspension to fully deferred suspensions in prior cases involving attorneys who drive while under the influence of alcohol. However, as a general rule, we tend to impose an actual suspension in those instances in which multiple DWI offenses are at issue, as well as in cases in which the DWI stems from a substance abuse problem that appears to remain unresolved.

Since 2009, this court has continued to adhere to the **Baer** standards, imposing an actual period of suspension in cases in which attorneys with substance use disorders are not participating in JLAP or otherwise able to prove their substance abuse problems have been resolved.[2] Recently, the court applied **Baer** in **In re: Mayer**, 20-1335 (La. 9/30/21), 330 So.3d 169. In **Mayer**, the attorney was arrested for DWI. Following his arrest, Mr. Mayer contacted JLAP and admitted that he was an alcoholic; however, he refused to comply with JLAP's recommendation for a substance abuse evaluation and treatment. When Mr. Mayer appeared for oral argument before this court, he asserted that he no longer had an unresolved substance use disorder. The court ordered an evaluation to assess Mr. Mayer's condition, but once again, Mr. Mayer declined to cooperate, even after assuring the court that he intended to do so. Citing **Baer**, the court found that because Mr. Mayer had a substance abuse problem that appeared to remain unresolved, a one year and one day suspension was appropriate. **Mayer**, 20-1335 at 8, 330 So.3d at 174.

---

[2] See, e.g., **In re Trelles**, 22-00534 (La. 6/22/22), 339 So.3d 624; **In re Wilson**, 20-1488 (La. 5/13/21), 320 So.3d 1064; **In re Bateman**, 20-01140 (La. 12/8/20), 305 So.3d 856; **In re: Anzalone**, 17-0387 (La. 5/12/17), 219 So.3d 311; **In re Gill**, 15-1373 (La. 10/23/15), 181 So.3d 669; **In re: James**, 12-2701 (La. 3/1/13), 108 So.3d 747; **In re: Guidry**, 11-1208 (La. 9/23/11), 71 So.3d 256.

In this matter, the majority opinion creates a special and unique disposition without articulation of any facts justifying such a drastic departure from **Baer**. A review of the record reveals no such justification. Creating a special sanction for one individual without articulating adequate reasons or justification undermines confidence in our attorney disciplinary system, and creates concerns about favoritism and inconsistency in application. While this unique sanction may provide some protection to those exposed to one who would otherwise be driving while impaired, what protection is provided for those who may retain an attorney who actually attends his substance abuse evaluation under the influence of alcohol?[3]

Although respondent only had one conviction for DWI, the record indicates he has a significant unresolved substance abuse issue. The JLAP evaluator recommended a three-day multi-disciplinary inpatient professional assessment to obtain collateral information and additional testing to confirm the presence and severity of a substance use disorder. Moreover, both Palmetto and PWEC recommended that he receive treatment related to his alcohol use, yet respondent has not done so.[4] In his testimony before the committee, respondent explained that he has been drinking alcohol on a regular basis since the age of fifteen. He acknowledged that alcohol played a part in the failure of his marriage. Nevertheless, he admitted that he continues to consume alcohol "just about every day." Respondent denied drinking during the workday and testified that he no longer drives if he goes out at night. He testified that he does not believe he has a substance abuse problem and that he can perform his duties as an attorney, and he is, therefore, not harming his clients. The committee's impression was that respondent wants to continue drinking as he is

---

[3] See footnote 4, *infra*.

[4] Notably, respondent tested positive for alcohol at the time of his admission to PWEC.

currently doing, and that he does not recognize or acknowledge any reason to alter his behavior because he believes his drinking has not impaired his ability to practice law or represent his clients. However, the Hearing Committee appropriately believed this assertion was "naive, at best." As noted in the assessments of the professionals who evaluated respondent, he has "significant denial regarding his alcohol use disorder and has refused to refrain from alcohol use, as he does not feel that it has impacted his professional responsibilities. He has rather poor insight into the significant impact that alcohol has played in his life and the resultant severe consequences."

The majority opinion's complete deferral of the suspension is unjustified in this case, where respondent has not fully cooperated with JLAP, and has otherwise refused to obtain treatment and delayed this matter by being evaluated and re-evaluated, while appearing at the re-evaluation under the influence. The sanction imposed does nothing to help respondent, does nothing to protect respondent's clients, and fails to adequately protect the public. There is no question respondent's untreated alcoholism impairs his practice, regardless of respondent's naive belief otherwise. Respondent's relationship to alcohol and drugs goes back decades.[5] His claims that he is capable of representing clients is belied by the fact that he mismanaged his trust account, which was overdrafted by approximately $22,000.00, evidencing conversion of client funds.[6] This court should not simply rely on

_____

[5] Respondent has admitted to drinking regularly since he was fifteen, and admits to drinking daily. Additionally, respondent was disbarred in 1979 following his conviction by a federal jury of conspiracy to import cocaine into the United States, conspiracy to possess cocaine with the intent to distribute, and possession of cocaine with the intent to distribute. **Louisiana State Bar Ass'n v. Bensabat**, 378 So.2d 380 (La. 1979). [Respondent was readmitted to the practice of law in 1986. **In re: Bensabat**, 480 So.2d 736 (La. 1986)].

[6] The respondent paid the overdrafts in the trust account; therefore, no actual harm to clients occurred. Respondent has also successfully completed the Louisiana State Bar Association's Trust Accounting School.

respondent's own statements that he is not impaired during the day. Because the imposed sanction does not include any form of monitoring, it is likely that respondent's substance abuse problem will continue to adversely affect his practice.

In the disciplinary arena, consistency is relied on in the jurisprudence to guide future sanctions. The majority cites no case law supporting the imposed sanction. This court must be cautious in its deviations from the normally imposed sanctions, and should fully explain the refusal to apply **Baer**. The failure to do so in this case will only serve to encourage every respondent to seek a special disposition based on their unique facts and circumstances, and discourage respondents from seeking help for their problems. The practice of law is a privilege, not a right. See **Louisiana State Bar Ass'n v. Cohen**, 138 So.2d 594, 596 (La. 1962); **Moity v. Louisiana State Bar Ass'n**, 121 So.2d 87, 90 (La. 1960). While this court is concerned with the well-being of each attorney, including Mr. Bensabat, this court also has an obligation to protect the public and ensure that attorneys are capable of practicing law competently. The public relies on the attorney disciplinary system and this court for such protection. Attorneys whose actions while suffering from a substance abuse problem that results in harm to a client or to the public have the burden to establish that the problem has been resolved. As the court explained in **In re Wilson**, 20-1488, p. 12 (La. 5/13/21), 320 So.3d 1064, 1071:

> While respondent disputes the conclusions of the JLAP evaluations, this court has long accepted the expertise of JLAP in guiding our decisions. Our purpose is not to punish lawyers purely for their substance abuse disorder, but to protect the public from actual and potential harm by ensuring those members of the profession with such problems obtain suitable treatment and are placed under appropriate monitoring in order to practice law with safety. Because issues of diagnosis and treatment are issues of medical science, our decisions must necessarily be based in large part on the evaluations conducted by trained professionals under the auspices of JLAP. These experts have

6

concluded respondent has unresolved issues of alcohol abuse that must be addressed in order for her to practice law safely.

My concern is as much about the individual attorney in this matter as it is about the public who he is serving as an attorney. The sanction imposed by the majority does not adequately address the impact respondent's substance abuse has on his health and well-being, on his practice, or whether his impairment adversely impacts those that he serves as an attorney. Moreover, this sanction is not in his best interest personally. Respondent and the public would be better served if this court issues a sanction to encourage respondent to pursue treatment for his substance abuse disorder and enter into a JLAP agreement, which allows for structured monitoring that would benefit him individually while also providing protection of the public. To this end, the court has allowed for deferment of an actual suspension sanction where the respondent agrees to enter into appropriate treatment. See, e.g., **In re Brown**, 17-1930, p. 9 (La. 9/18/18), 252 So.3d 468, 474 ("[W]e will suspend respondent from the practice of law for one year and one day. In view of the mitigating factors, we will defer all but ninety days of this suspension, subject to a two-year probationary period and with the condition that during the active period of his suspension, respondent shall enter into long-term inpatient treatment at a JLAP-approved facility ...."). In this case, I would impose a suspension of one year and one day, fully deferred on the condition that respondent enter into appropriate treatment within thirty days. This approach gives respondent the "keys to his own cell" insofar as he can choose to have the suspension fully deferred by pursuing treatment or he can decline to pursue treatment, thereby accepting the one year and one day actual suspension.[7]

---

[7] The sanction of a one-year-and-one-day suspension means respondent will have to file a formal application for reinstatement in the event he wishes to return to the practice of law. This will ensure

7

For the above reasons, I respectfully dissent.

---

that the public is protected before respondent can be reinstated to the practice of law.