# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE

NEWS RELEASE #032

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **28th day of June, 2024** are as follows:

**PER CURIAM:**

*2024-B-00262*          *IN RE: TIMOTHY A. MECHE*

SUSPENSION IMPOSED. SEE PER CURIAM.

SUPREME COURT OF LOUISIANA

NO. 2024-B-0262

IN RE: TIMOTHY A. MECHE

ATTORNEY DISCIPLINARY PROCEEDING

PER CURIAM

This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, Timothy A. Meche, an attorney licensed to practice law in Louisiana.

**UNDERLYING FACTS**

Respondent has been arrested for DWI on three occasions. His first DWI arrest occurred in October 2014. His second and third DWI arrests, in January 2018 and May 2019, are described in detail in the formal charges, as follows:

*Count I*

On January 8, 2018, Officer Amyra Allen of the Pollock Police Department was approached by a passer-by who advised that "an older white male driving a silver 4-door had just left the Grant One Stop pouring mixed alcoholic drinks and was driving erratically." Officer Allen followed the vehicle in question and observed the driver traveling in and out of both lanes on Highway 165 without signaling. Officer Allen conducted a traffic stop and directed the driver, identified as respondent, to exit the vehicle.

Upon detecting a strong odor of alcohol, Officer Allen instructed respondent to stand in front of the patrol car while she gathered information. Respondent instead walked to the driver side of the vehicle. He was again directed to stand in front of

the patrol car but needed assistance from Officer Allen because he was swaying. Respondent denied that he consumed alcohol or that alcoholic beverages were in his possession.

Other law enforcement officers arrived on the scene to assist Officer Allen. One of the officers attempted to conduct a field sobriety test, but respondent refused to cooperate. He was then detained and placed in the back of Officer Allen's unit. The officers conducted a search of respondent's vehicle and found one clonazepam pill, a pill bottle with no label, an empty beer can, two small bottles of mouthwash – one with the cap off – and a half empty bottle of bourbon. Officer Allen arranged for the vehicle to be towed and transported respondent to the Grant Parish jail for booking on charges of DWI and possession of clonazepam.

The ODC learned of respondent's arrest in March 2018 via an anonymous complaint. In April 2018, the ODC notified respondent of the complaint and instructed him to contact the Judges and Lawyers Assistance Program ("JLAP"). Respondent did so and was admitted to a detox facility in Chicago on May 26, 2018. On May 29, 2018, he was transferred to the Positive Sobriety Institute ("PSI"). Respondent was successfully discharged from PSI on July 24, 2018, but upon discharge he immediately relapsed. Respondent subsequently agreed to return to PSI for an evaluation; however, he failed to do so.

On September 17, 2021, respondent pleaded guilty to first offense DWI in Grant Parish. Imposition of sentence was partially deferred pursuant to La. Code Crim. P. art. 894, and respondent was placed on twelve months of misdemeanor probation with conditions.

On May 3, 2019, Louis Sharon was driving on I-10 in East Baton Rouge Parish when a black Cadillac rear-ended his vehicle. Mr. Sharon drove to the shoulder, but the Cadillac continued traveling on I-10. Mr. Sharon followed the Cadillac and called 911 to report the accident. Mr. Sharon provided a description of the Cadillac and its license plate number to the operator, who directed Mr. Sharon to drive to Louisiana State Police Troop A. After interviewing Mr. Sharon about the accident, Trooper James Summerford performed a query of the license plate number, identified respondent as the owner of the Cadillac, and requested a trooper be dispatched to respondent's home to locate the car. Trooper Summerford was informed that the Cadillac was not there.

Later, a concerned citizen contacted 911 to report a vehicle operating recklessly on I-12. The citizen described the vehicle as a black Cadillac with severe damage to its radiator and provided the operator with the license plate number. After locating the Cadillac on I-12 at Jefferson Highway, Baton Rouge police officers initiated a traffic stop. The officers believed the driver, identified as respondent, to be impaired, and contacted Sergeant Mickey Duncan of the Baton Rouge Police Department DWI Task Force for assistance.

Upon arrival, Sergeant Duncan observed a black Cadillac with severe front-end damage, stationary on the shoulder of the highway. While speaking with respondent, Sergeant Duncan noticed respondent was swaying. He also detected a strong odor of alcohol on respondent's breath and person, observed that his eyes were red and bloodshot, and found his speech was slurred.[1] Sergeant Duncan advised respondent of his Miranda rights and asked him about the damage to the Cadillac. Respondent admitted to driving the Cadillac but refused to answer

---

[1] At one point, the officers had to pull respondent back from trying to walk to the center of the interstate.

questions about the damage. He also refused to submit to a field sobriety test and invoked the right to counsel. Sergeant Duncan then arrested respondent for DWI and transported him to the police station. On the way, Sergeant Duncan verified that the Cadillac's license plate number was the same as the one provided by Mr. Sharon, the victim of the hit and run accident.

Upon arrival at the police station, Sergeant Duncan read respondent his rights relating to chemical tests for intoxication and the consequence of submitting to or refusing testing. Respondent signed the Arrestee's Rights Form, acknowledging that it had been read to him, but he refused to submit a breath sample for chemical testing.

On February 19, 2021, respondent pleaded guilty in East Baton Rouge Parish to hit and run driving and reckless operation of a motor vehicle. He was sentenced to ninety days in jail, suspended, and placed on unsupervised probation for one year with conditions.

## DISCIPLINARY PROCEEDINGS

In December 2021, the ODC filed formal charges against respondent, alleging that his conduct violated Rules 8.4(a) (violation of the Rules of Professional Conduct) and 8.4(b) (commission of a criminal act reflecting adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer) of the Rules of Professional Conduct. In his answer to the charges, respondent admitted he had been arrested for DWI in 2018 and 2019, and he also admitted to violating Rules 8.4(a) and 8.4(b). In all other respects, respondent denied the allegations of the formal charges.

Considering respondent's answer, the matter proceeded to a formal hearing on the merits.

4

*Formal Hearing*

The hearing committee conducted the formal hearing on October 18, 2022. At the outset of the hearing, respondent's counsel informed the committee that respondent had recently learned there were two warrants out for his arrest, one pertaining to a probation issue related to one of his DWI arrests and one relating to his alleged failure to timely return a leased car. Counsel further represented that due to a concern that respondent may be arrested by law enforcement officers who would be present at the hearing, respondent decided to spend the day trying to get the warrants resolved rather than appear at the hearing.

The ODC introduced documentary evidence at the hearing and called the following witnesses to testify before the committee: Jennifer Gros, JLAP's Clinical Director; Sergeant Mickey Duncan; Trooper James Summerford; and Officer Amyra Allen.

*Hearing Committee Report*

After considering the evidence and testimony presented at the hearing, the hearing committee made findings consistent with the underlying facts as set forth above. The committee also found the hearing testimony to be credible and truthful, including Sergeant Duncan's assessment that respondent was under the influence of alcohol when he was arrested in 2019, Trooper Summerford's testimony regarding respondent's hit and run, Officer Allen's testimony regarding respondent's 2018 DWI arrest, and Ms. Gros' testimony regarding respondent's noncompliance status at JLAP. Based upon these findings, the committee determined respondent violated the Rules of Professional Conduct as charged in the formal charges.

The committee determined respondent violated duties owed to the public and the legal system. His conduct was negligent, knowing, and intentional. Respondent caused serious actual and potential harm to the public, and he caused actual harm to

5

Mr. Sharon, whom he dangerously rear-ended while driving recklessly and under the influence of alcohol. Relying on the ABA's *Standards for Imposing Lawyer Sanctions*, the committee determined the baseline sanction is suspension.

The committee determined the following aggravating factors are present: multiple offenses, substantial experience in the practice of law (admitted 1989), and illegal conduct. The committee did not mention any mitigating factors.

In determining an appropriate sanction, the committee reviewed and relied on the following cases: *In re: Holliday*, 09-0116 (La. 6/26/09), 15 So. 3d 82 (attorney arrested for two DWI's, arrested for damaging property and violating a restraining order, and failed to cooperate with the ODC's investigation; suspended from the practice of law for three years); *In re: Gill*, 15-1373 (La. 10/23/15), 181 So. 3d 669 (attorney arrested and charged with three DWI offenses, arrested in connection with an alcohol-related disturbance, and made false statements to the ODC; suspended from the practice of law for one year and one day); *In re: Reynolds*, 09-0216 (La. 3/4/09), 3 So. 3d 457 (attorney convicted of third offense DWI and failed to report his prior convictions to the ODC; suspended from the practice of law by consent for one year and one day); and *In re: Alexander*, 08-0462 (La. 6/27/08), 984 So. 2d 702 (attorney convicted of DWI on three occasions and had probation revoked for failing to attend a court-ordered substance abuse program; suspended from the practice of law for one year and one day).

After considering this jurisprudence, the committee concluded that respondent's multiple arrests, the actual and potential harm caused by his conduct, and the aggravating factors warranted more than a one year and one day suspension. The committee determined that the appropriate sanction falls in between the cases supporting a one year and one day suspension and a three-year suspension, which was the sanction imposed in *Holliday*.

6

The committee ultimately recommended that respondent be suspended from the practice of law for a period of two years. The committee also recommended that he be assessed with the costs and expenses of this proceeding.

Respondent filed an objection to the hearing committee's report.

*Disciplinary Board Recommendation*

The board determined that the hearing committee's factual findings are not manifestly erroneous and are supported by the record. The board adopted those findings and made additional findings of fact, including the following:

On October 31, 2014, respondent was arrested and charged with first offense DWI and improper lane usage. Prior to the arrest, respondent's vehicle was observed swerving in and out of lanes by a concerned citizen and later by a law enforcement officer. After a traffic stop, two officers observed that respondent had unsure balance and stumbled when walking. Respondent's speech was slurred and almost incoherent at times, and the officers smelled a strong odor of alcohol on his breath and body. A blood test taken approximately four hours after the stop showed respondent's blood alcohol content to be 0.27g%. This arrest apparently resulted in respondent being placed in a diversion program.

Respondent contacted JLAP after his January 2018 DWI arrest. After spending several days in a detox facility, he was admitted to PSI, a JLAP-approved residential treatment center in Chicago. Respondent was diagnosed with alcohol use disorder, severe, and unspecified anxiety disorder, and it was recommended that he sign a five-year recovery monitoring contract with JLAP. Respondent was discharged from PSI on July 24, 2018. The next day, he relapsed and drank alcohol. Respondent self-reported his relapse, and JLAP recommended he undergo an inpatient multiprofessional assessment to determine a clinical course of action. Respondent contacted JLAP in 2019 and again in 2022 to request referrals for an

assessment. JLAP responded to each request, but respondent has had no other contact with JLAP and has never participated in a second assessment.

Based on these findings, the board determined that respondent violated Rules 8.4(a) and 8.4(b) as charged in the formal charges. Specifically, the board found there is clear and convincing evidence in the record that respondent was driving while intoxicated on October 31, 2014; that he pleaded guilty to first offense DWI on September 17, 2021 as a result of his arrest on January 8, 2018; and that respondent was driving while intoxicated when he caused an accident on May 3, 2019 and fled the scene without stopping, resulting in his February 19, 2021 guilty plea to charges of hit and run driving and reckless operation of a motor vehicle.

The board determined that respondent violated duties owed to the public and the legal profession. His conduct was knowing and intentional. He caused damage to Mr. Sharon's vehicle and his own vehicle. Respondent also caused potential serious harm to himself and to the public by driving while intoxicated on three occasions. His public criminal behavior reflects adversely on the profession. Relying on the ABA's *Standards for Imposing Lawyer Sanctions*, the board determined the baseline sanction is suspension.

The board determined the following aggravating factors are present: a pattern of misconduct, substantial experience in the practice of law, and illegal conduct. The board determined the following mitigating factors are present: absence of a prior disciplinary record and imposition of other penalties and sanctions.

Turning to the issue of an appropriate sanction, the board relied on *In re: Steger*, 18-1979 (La. 5/8/19), 283 So. 3d 463 (attorney with a history of arrests involving alcohol pleaded guilty to DWI; suspended from the practice of law for eighteen months, with all but six months deferred, followed by a five-year period of probation coinciding with a JLAP recovery agreement). The evidence in this matter shows respondent engaged in criminal conduct by driving while intoxicated on three

8

occasions over a six-year period; on one of the occasions, he caused an accident and left the scene. Respondent sought substance abuse treatment in 2018, but he relapsed and drank alcohol on the day after his discharge. His third DWI arrest occurred several months later. Unlike Mr. Steger, who remained compliant with a JLAP agreement, respondent has not complied with JLAP's recommendations.

Considering all the facts and circumstances presented, including respondent's multiple acts of driving while intoxicated over many years and his unresolved severe alcohol use disorder, a majority of the board agreed that the two-year suspension recommended by the hearing committee is warranted. The board further recommended respondent be assessed with the costs and expenses of this proceeding.

Two board members dissented, finding the proposed sanction is too harsh in light of respondent's significant substance abuse problem.

Respondent filed an objection to the board's recommendation. Accordingly, the case was docketed for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).

**DISCUSSION**

Bar disciplinary matters fall within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. *In re: Banks*, 09-1212 (La. 10/2/09), 18 So. 3d 57. While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee's factual findings. *See In re: Caulfield*, 96-1401 (La. 11/25/96), 683 So. 2d 714; *In re: Pardue*, 93-2865 (La. 3/11/94), 633 So. 2d 150.

9

Respondent has largely admitted the factual allegations of the formal charges. He was arrested for DWI on three occasions, and on one such occasion caused an accident and left the scene. This conduct violates the Rules of Professional Conduct as charged. Because respondent has admitted to these rule violations, the only issue before the court is that of an appropriate sanction.

In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. *Louisiana State Bar Ass'n v. Reis*, 513 So. 2d 1173 (La. 1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. *Louisiana State Bar Ass'n v. Whittington*, 459 So. 2d 520 (La. 1984).

Respondent violated duties owed to the public and the legal profession. His conduct was knowing and intentional. He caused actual damage to Mr. Sharon's vehicle and to his own vehicle, and he also caused the potential for serious harm to himself and to the public. His public criminal behavior reflects adversely on the profession. The baseline sanction for this type of misconduct is suspension. The aggravating and mitigating factors found by the disciplinary board are supported by the record.

Both the hearing committee and the disciplinary board have recommended a two-year suspension. Respondent argues that this sanction is too harsh and that he should be suspended for one year and one day, with at least ninety days deferred.

The court's seminal case addressing the issue of lawyers who are arrested for DWI is *In re: Baer*, 09-1795 (La. 11/20/09), 21 So. 3d 941. In *Baer*, we stated the following with respect to appropriate sanctions for DWI offenses:

> We have imposed sanctions ranging from actual periods of suspension to fully deferred suspensions in prior cases involving attorneys who drive while under the influence

of alcohol. However, as a general rule, **we tend to impose an actual suspension** in those instances in which multiple DWI offenses are at issue, as well as **in cases in which the DWI stems from a substance abuse problem that appears to remain unresolved.** [Emphasis added.]

Following his January 2018 arrest, respondent underwent an assessment and was diagnosed with alcohol use disorder, severe. Immediately after being discharged from the residential facility where he received treatment, respondent relapsed and drank alcohol. Thereafter, JLAP recommended that respondent undergo an inpatient multiprofessional assessment, but respondent never participated in the assessment. Under the circumstances, we must conclude that respondent has a substance abuse problem that is unresolved, and an actual suspension is therefore warranted under *Baer*.

Based on our review, the jurisprudence cited by the hearing committee and the disciplinary board supports the recommended discipline. The sanction of a two-year suspension means respondent will have to file a formal application for reinstatement if he wishes to return to the practice of law. We specifically caution respondent that in the event he applies for reinstatement, he will be required to show compliance with the criteria set forth in Supreme Court Rule XIX, § 24(E), including obtaining a JLAP evaluation and participating in any recommended treatment and/or monitoring.

Under the circumstances, we will accept the board's recommendation and suspend respondent from the practice of law for two years.

**DECREE**

Upon review of the findings and recommendations of the hearing committee and the disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Timothy A. Meche, Louisiana Bar Roll number 19706, be and he hereby is suspended from the practice of law for a period of two years. All costs and

expenses in the matter of this disciplinary proceeding are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.